## Richmond

### Howard B. Gill, Et Al., Etc. v. William W. Nickels, Mayor, Etc.

June 13, 1955.

Record No. 4394.

Present, All the Justices.

The opinion states the case.

*Wilbur C. Hall*, for the plaintiffs in error.

Defendant in error not represented by counsel.

Spratley, J., delivered the opinion of the court.

This is a proceeding for a declaratory judgment, Virginia Code, § 8-578, *et seq.*, to determine whether the Mayor of the Town of Leesburg, Virginia, has the right and power to veto any ordinance, or resolution having the effect of an ordinance, passed or adopted

by the Council of the said Town. The petition was filed by Howard B. Gill, Morton Riddle, III, Emerson H. James, Reginald K. Gheen, Maurice R. Lowenbach, and Frank Raflo, the six members of the Council of the Town of Leesburg, now the appellants, against the appellee, William W. Nickels, Mayor of Leesburg.

The petition alleged that Mayor Nickels on April 16, 1954, had wrongfully and unlawfully vetoed two ordinances adopted by the Council of Leesburg on April 12, 1954; that the Council again adopted the two ordinances on May 14, 1954, together with a resolution declaring that the Mayor had no veto power; and that on May 19, 1954, the Mayor vetoed both the ordinances and resolution passed by the Council on May 14th. They further charged that on account of the controversy, the Council of the Town was unable to properly conduct the affairs and business of the municipality. They moved the court to declare the Mayor to be without the veto power, except "in cases involving franchises and bond issues and, perhaps, the sale of the property of the Town."

Mayor Nickels filed an answer admitting the relevant facts set out in the petition, and joined in the motion that the court adjudicate the question presented.

The trial court, in a well reasoned written opinion, held that the Mayor was possessed of the right to veto ordinances of the Town, under and pursuant to § 123 of the Constitution of Virginia, and entered judgment accordingly. Upon petition of appellants challenging this decision, we granted a writ of error.

The sole question for our determination is whether or not, in the absence of any enabling provision in the statutes or in the charter of the Town of Leesburg, § 123 of the Constitution gives the Mayor veto power.

The Town of Leesburg is organized and governed under the charter granted by the General Assembly in 1936, Acts 1936, Chapter 408, pages 763, *et seq*. This Act repealed the 1914 charter of Leesburg, Acts 1914, Chapter 148, which contained a provision authorizing the Mayor to exercise the veto power.*

Under § 7 of the 1936 charter, the government of the Town is

---

* Section 117(b) of the Constitution empowers the General Assembly "by general law or by special act" to "provide for the organization and government of cities and towns without regard to, and unaffected by any of the provisions" of Article VIII, except those of sections 124, 125, 126, 127 and 117(d), provided such organization and government have been adopted by a majority vote of the qualified voters of such cities or towns. The charter of the town of Leesburg does not purport to have been enacted pursuant to section 117(b) and hence is subject to the general provisions of Article VIII, including those in section 123.

vested in a Council composed of a Mayor and six members. Under § 24, the duties of the Mayor, as chief executive officer of the Town, are prescribed; but no reference is made to the exercise of the veto power by him. Under § 32, the Mayor is authorized to cast the deciding vote in case of a tie vote of the Council members. If he possesses the veto power over measures adopted by the Council, it must be found in § 123 of the Constitution of Virginia, 1902.

Section 123 is contained in Article VIII of the Constitution entitled "Organization and Government of Cities and Towns." The section reads as follows:

"Every ordinance, or resolution having the effect of an ordinance, shall, before it becomes operative, be presented to the mayor. If he approve he shall sign it, but if not, if the council consist of two branches, he may return it, with his objections in writing, to the clerk, or other recording officer, of that branch in which it originated; which branch shall enter the objections at length on its journal and proceed to reconsider it. If after such consideration two-thirds of all the members elected thereto shall agree to pass the ordinance or resolution; it shall be sent, together with the objections, to the other branch, by which it shall likewise be considered, and if approved by two-thirds of all the members elected thereto, it shall become operative, notwithstanding the objection of the mayor. But in all such cases the votes of both branches of the council shall be determined by yeas and nays, and the names of the members voting for and against the ordinances or resolution shall be entered on the journal of each branch. If the council consist of a single branch, the mayor's objections, in writing, to any ordinance, or resolution having the effect of an ordinance, shall be returned to the clerk, or other recording officer of the council, and be entered at length on its journal; whereupon the council shall proceed to reconsider the same. Upon such consideration the vote shall be taken in the same manner as where the council consists of two branches, and if the ordinance or resolution be approved by two-thirds of all the members elected to the council, it shall become operative, notwithstanding the objection of the mayor. If any ordinance or resolution shall not be returned by the mayor within five days (Sunday excepted) after it shall have been presented to him, it shall become operative in like manner as if he had signed it, unless his term of office, or that of the council, shall expire within said five days.

"The mayor shall have the power to veto any particular item or items of an appropriation ordinance or resolution; but the veto shall

not affect any item or items to which he does not object. The item or items objected to shall not take effect except in the manner provided in this section as to ordinances or resolutions not approved by the mayor. No ordinance or resolution appropriating money exceeding the sum of one hundred dollars, imposing taxes, or authorizing the borrowing of money, shall be passed, except by a recorded affirmative vote of a majority of all the members elected to the council or to each branch thereof where there are two; and in case of the veto by the mayor of such ordinance or resolution, it shall require a recorded affirmative vote of two-thirds of all the members elected to the council, or to each branch thereof where there are two, to pass the same over such veto in the manner provided in this section. Nothing contained in this section shall operate to repeal or amend any provision in any existing city charter requiring a two-thirds vote for the passage of any ordinance as to the appropriation of money, imposing taxes or authorizing the borrowing of money."

Appellants contend that § 123 is ambiguous and obscure, and that to determine what is really intended by it we must be guided by the general rules which apply to the interpretation of doubtful constitutional or statutory provisions. They say that the intention of the framers of the Constitution to make the section apply only to cities is shown by the discussions in Volume II, Debates of the Constitutional Convention of Virginia, 1901-1902, pages 1895, *et seq.* They argue that the legislature has so interpreted and construed it, in the granting of town charters, some with provisions authorizing the exercise of the veto power by the mayor, some denying that power, and some without mention of it. They further say that this interpretation has been followed by the enactment of Code, § 15-410 specifically setting out the veto power of a mayor of a city, and by the absence of any general statute conferring such power on mayors of towns.

■ The exercise of the veto power by the executive has long been granted, with various limitations, in American Constitutions, national and state. § 7 of Article I of the Constitution of the United States; Section 8 of Article IV of the Constitution of Virginia, 1869; Section 76 of Article V of the Constitution of Virginia, 1902.

The veto power of the executive is a grant of authority to enable him to approve or disapprove legislative enactments, in order to prevent, as far as possible, the evils that flow from hasty, arbitrary and ill-considered legislation. It is directed to the securing of better

government by enlarging the power of executives and holding them to a public responsibility. Constitutional provisions regulating the presentation, approval and veto of measures by the executives are mandatory, and as thus established cannot be enlarged, curtailed, changed or qualified by the legislative body. 82 C. J. S., Statutes, § 47, pages 74, *et seq.;* 50 Am. Jur., Statutes, § 96, pages 102, *et seq.*

■ The language of § 123 is plain, broad, compelling and comprehensive. It requires that "Every ordinance, or resolution having the effect of an ordinance, shall, before it becomes operative, be presented to the Mayor. If he approve he shall sign it, but if not, * * *" he shall return it to the Council, with his objections in writing. Town councils enact ordinances as well as city councils.* Towns have mayors as have cities. While there is a difference in degree as to the measure of their respective duties and responsibilities, there is no difference in their title. Nor is any distinction between town and city councils and between town and city mayors made by § 123. Six of the twelve sections of Article 8 of the Constitution, sections 116, 117, 124, 125, 126 and 127 relate to both cities and towns; five sections, 118, 119, 120, 121 and 122 relate specifically to cities alone.

The first two sentences of § 123 as originally drawn and submitted to the Constitutional Convention of 1901-1902 by its "Committee on the Organization and Government of Cities and Towns," contained the following language:

"Every joint resolution or ordinance *which shall have passed both branches of the city council,* shall, before it becomes operative, be presented to the mayor *of said city.** If he approve he shall sign it, but if not he shall return it with his objections in writing to the

---

* Code, § 1-13 (5) provides that: "The word 'council,' unless a different meaning clearly appears from the context shall include any body or bodies authorized to make ordinances for the government of a city or town."

Section 15-1 (3) reads: "The term 'council' shall mean the council or governing body, as the case may be, of a city or town."

* "Section 9. Every joint resolution or ordinance which shall have passed both branches of the city council, shall, before it becomes operative, be presented to the mayor of said city. If he approve he shall sign it, but if not he shall return it with his objections in writing to the clerk, or other recording officer, of that branch of the council in which it shall have originated, which branch of said council shall enter his objections at length on its journal and proceed to reconsider it. If, after such consideration, two-thirds of all the members elected shall agree to pass the resolution or ordinance it shall be sent, together with the objections, to the other branch of said council, by which it shall likewise be considered, and if approved by two-thirds of all the members elected thereto, it shall become operative, notwithstanding the objections of the mayor. But in all such cases the votes

clerk, or other recording officer, of that branch of the council in which it shall have originated, which branch of said council shall enter his objections at length on its journal and proceed to reconsider it. * * *." (Italics added.)

However, before final adoption of the section the words above italicized were eliminated. New language was added to the section making it apply to the ordinances of a council consisting of a single branch as well as to one consisting of two branches. It contains no language confining its operation to ordinances passed by a city council or to those presented only to the mayor of a city. It is unreasonable to believe that the words which limited the applicability of the section to cities would have been stricken if it had not been intended that it should apply to towns as well as cities. Had the framers of the Constitution intended to confer the veto power only on mayors of cities, they could have readily inserted the words "of a city," after each of the words "resolution" and "mayor," in the present section. They might also have had the first sentence commence with such a limitation as is contained in sections 118, 119, 120 and 121. No such limitation is found, and no good reason has been advanced why any limitation should now be inserted by the legislature or the courts.

■ That the legislature has granted town charters, with and without special provisions relating to the veto power of the mayor, has enacted Code, § 15-410,[1] specifically setting out the veto power of mayors of cities, and has passed no general statute relating to the veto power of the mayor of a town, in no way lessens the force and effect of § 123 of the Constitution. Many Code sections copy or

---

of both branches of the city council shall be determined by ayes and noes, and the names of the members voting for and against the said resolution or ordinance shall be entered on the journal of each branch respectively. If any resolution or ordinance shall not be returned by the mayor within five days (Sundays excepted) after it shall have been presented to him the same shall become operative in like manner as if he had signed it, unless his term of office, or that of the city council, or both, shall expire within said five days.

"The mayor shall have the power to veto any particular item or items of an appropriation ordinance or resolution, but said veto shall not affect any item or items to which he does not object. The item or items objected to shall not take effect except in the manner provided in this section as to joint resolutions or ordinances not approved by the mayor." Debates of the Constitutional Convention, 1901-1902, Volume II, page 1952.

[1] Code, §15-410 is in the same language as the first portion of § 123 of the Constitution, with the exception of the addition of the words "passed by the council of a city" and "of such city" in the first sentence of the statute. The first sentence is couched in the language of the Constitutional provision as it was first proposed, except as to the set-up of the council.

paraphrase certain constitutional provisions, with or without change;[2] but this does not mean that, in the absence of statutory enactment, mandatory requirements of the Constitution are not effective.

The language of § 123 is plain and simple. A consideration of the natural significance of the words employed and the inclusion of the section within the broad title "Organization and Government of Cities and Towns," conveys the definite meaning that the section is applicable to both cities and towns. It is self-executing and no legislation is needed to make it operative.

The object of § 123 and the intent of its framers are found in the plain and simple language used. The words used should be given the meaning which they express and in giving consideration thereto, we are not at liberty to search for a meaning beyond the instrument. Hence general rules for the construction of constitutional and statutory provisions of doubtful meaning have no application. *Town of South Hill* v. *Allen*, 177 Va. 154, 12 S. E. (2d) 770.

It may be noted that the language of § 123 of the Constitution of Virginia conferring the veto power on a mayor is quite similar to the language of § 7 of Article I of the Constitution of the United States, granting the President the veto power, and § 76 of the Constitution of Virginia, 1902, granting such power to the Governor. These provisions have not been challenged for ambiguity, and we think that § 123 is quite as clear and unambiguous.

It is further suggested by appellants that the provision of the Leesburg charter, which gives the mayor the right to cast the deciding vote in case of a tie vote, at any meeting of the council or whenever the vote of the mayor is necessary to give validity to any ordinance or resolution, is inconsistent with the veto power. Cf. *Commonwealth* v. *Cole*, 10 Va. Law Register, 722, in which writ of error was refused. O. B. 33, page 284. We agree with the trial judge that a decision on that question is unnecessary, since that charter provision is not here under attack.

As applied to the facts in this case, we are of opinion that the trial court correctly determined the issue before it, and its judgment is accordingly affirmed.

*Affirmed.*

---

[2] Cf. Code, sections 15-595 relating to issues of bonds by cities and towns, and 15-727 relating to the granting of franchises, etc., by cities and towns, which respectively contain legislative provisions in accord with the requirements of sections 127 and 125 of the Constitution.